UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BONNIE LYN HAUGEN,<br><br>             Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>             Defendant. | CASE NO. 2:15-cv-0943 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 16, 17, 18).

After considering and reviewing the record, the Court concludes the ALJ's erroneous rejection of Dr. Swanson's psychological opinion results in a residual functional capacity that potentially fails to account for plaintiff's marked limitations in

many areas of cognitive and social functions. Reversal and remand for further proceedings is required.

## BACKGROUND

Plaintiff, BONNIE LYN HAUGEN, was born in 1971 and was 38 years old on the alleged date of disability onset of March 15, 2010 (*see* AR. 184-91). Plaintiff dropped out of school in the tenth grade and has not obtained her GED (AR. 39-40). Plaintiff has some work experience as a hotel/motel housekeeper, and doing laundry and night security (AR. 247). Plaintiff was last employed part-time doing housekeeping and laundry but it lasted less than six months because the people and the work were allegedly too much for her (AR. 40-41).

According to the ALJ, plaintiff has at least the severe impairments of "Guillain-Barre syndrome status post motor vehicle accident with ataxic gait, affective disorder, anxiety disorder, and substance abuse disorder (20 CFR 416.920(c))" (AR. 20).

At the time of the hearing, plaintiff and her husband were living in a 20-foot trailer in an RV park (AR. 63).

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* AR. 72-84, 86-100). Plaintiff's requested hearing was held before Administrative Law Judge M.J. Adams ("the ALJ") on December 3, 2013 (*see* AR. 34-70). On January 14, 2014, the ALJ issued a written decision in which the ALJ

concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 15-33).

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) Whether the ALJ erred in evaluating the medical opinion source evidence in the record; (2) Whether the ALJ erred by failing to develop the record; (3) Whether the ALJ erred by failing to find the claimant's bipolar disorder and PTSD to be severe impairments; and (4) Whether the ALJ erred in assessing the claimant's credibility (*see* Dkt. 16, p. 1-2). Because the Court finds error in the ALJ's evaluation of medical evidence, not all issues will be addressed below.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

### DISCUSSION

(1) Whether the ALJ erred in evaluating the medical opinion source evidence.

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Plaintiff

contends the ALJ improperly rejected the opinions of several examining medical sources (Dkt. 16, at 4-14).

One examining psychologist, Lena K. Swanson, Ph.D. evaluated plaintiff on February 8, 2013 (AR. 312-14). Dr. Swanson diagnosed post-traumatic stress disorder ("PTSD"), mood disorder, not otherwise specified ("NOS"), and gave a provisional diagnosis of cognitive disorder, NOS (AR. 314). In addition to a clinical interview, Dr. Swanson made observations and performed a mental status examination (AR. 312-14). Dr. Swanson noted normal grooming, good eye contact, polite and cooperative behavior, and normal mood and affect (AR. 313). However, Dr. Swanson also observed slow thought processes and an "almost childlike" manner (AR. 313). Plaintiff "giggled frequently," but showed no evidence of delusions, bizarre thoughts or behavior, tangential speech or circumstantial thinking (AR. 313). Plaintiff was moderately impaired as to mental status and mostly oriented to time and place (AR. 313). Plaintiff could read and follow a simple written command, comprehend and follow a three-step verbal command, and recall three words after a brief delay (AR. 313-14). But, she could not write a comprehensive sentence, accurately copy an intersecting design, or correctly repeat a sentence after three tries (AR. 314). Additionally, she correctly calculated only one of five serial sevens and could not spell "world" either forward or backward (AR. 314). Plaintiff could not recall what she ate for breakfast the previous day or what she did on her last birthday (AR. 314). She showed poor fund of knowledge, judgment, abstract thinking skills, and limited insight (AR. 314). Dr. Swanson saw no evidence of

malingering or exaggeration of symptoms, and opined that plaintiff may have a cognitive or intellectual disorder (AR. 314).

After reviewing her observations and the mental status examination results, Dr. Swanson offered a medical source statement:

> She appears moderately limited in her ability to understand, remember, and carry out short simple instructions and moderately to markedly limited in her ability to understand, remember, and carry out more complex and detailed instructions. She is markedly limited in her ability to make work-related judgments and decisions and may be markedly to extremely limited in her ability to respond to and interact appropriately with supervisors, co-workers, and the general public. She is markedly limited in her ability to respond appropriately to work-related pressures and may be moderately limited in her ability to respond appropriately to changes in a work [sic] (AR. 314).

The ALJ gave this opinion little weight as (1) "too vague and general to be vocationally relevant"; (2) heavily reliant on plaintiff's subjective complaints; and (3) not supported by the observations (AR. 27).

The ALJ found Dr. Swanson's opinion to be vague and not vocationally relevant. "She suggests a number of moderate to marked limitations, but does not describe whether the claimant would be capable of performing such activities with some restrictions or limitations, or for two-hour periods during an eight-hour day with normal breaks" (AR. 27). Plaintiff argues this criticism is not a legitimate reason to discount the opinion (Dkt. 16, at 6). The Court agrees, and notes the ALJ also improperly rejected an opinion from examining psychologist Silvia Thorpe, Ph.D. for the same tenuous reasoning.

Dr. Swanson did not give her opinion on the standard check box form, instead providing her opinion in narrative form (AR. 312-14). Despite the alternate format, Dr.

Swanson employed the same language of mild, moderate, and marked limitations routinely used in psychological evaluations for disability benefits (AR. 314). She also discussed many of the same categories including plaintiff's ability to understand, remember, and carry out instructions, make work-related judgments and decisions, respond to and interact appropriately with supervisors, co-workers, and the public, respond appropriately to work related pressures and changes in work (AR. 314). Given the number of "marked" limitations assessed, Dr. Swanson clearly expressed her opinion that plaintiff would have significant difficulty performing most job-related activities. Her medical source statement belies the ALJ's finding that she failed to include whether claimant could perform activities with limitations or restrictions.

In defense of the ALJ's conclusion that the opinion was too vague and general, the Commissioner cites *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000). In *Curry*, the Second Circuit concluded that a physician's "use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that [the claimant] can perform the exertional requirements of sedentary work." Id at 123. While on the surface this appears to support the ALJ's conclusion, *Curry* concerns the use of the terms "moderate" and "mild" in evaluating a plaintiff's physical capability rather than mental capacity as in this case. The Social Security regulations include specific categories of physical capability including sedentary, light work, medium work, heavy work, and very heavy work. 20 C.F.R. §416.967. Medical opinions on physical function should utilize on the defined exertional requirements, rather than the

terminology "mild" or "moderate." In contrast, evaluation of mental impairments relies on the use of terms "mild," "moderate," and "marked."  20 C.F.R. 416.920a(c)(4). Therefore, a psychological opinion that uses these terms is not necessarily too vague or general to be relevant. *Curry* is inapposite to the facts of this case.

Furthermore, upon finding the opinion too general and vague to be of assistance the ALJ could have requested additional information from Dr. Swanson. The ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (*quoting Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))). The ALJ's "duty exists even when the claimant is represented by counsel." *Brown*, *supra*, 713 F.2d at 443 (*citing Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981)).  The ALJ's duty to supplement the record is triggered if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*citing Smolen, supra*, 80 F.3d at 1288 (other citation omitted)).  Here, the ALJ found the opinions of both Drs. Swanson and Thorpe to be general and vague. If the ALJ found these two major examining psychological opinions inadequate to derive any vocationally relevant information, he could have supplemented or clarified the evidence in the record.

The ALJ also rejected Dr. Swanson's opinion as too heavily reliant on plaintiff's unreliable subjective statements (AR. 27). "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly

discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). But, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, Dr. Swanson not only conducted a clinical interview focusing on plaintiff's subjective history and complaints, but also made her own observations and conducted a mental status examination (AR. 312-14). Dr. Swanson used her professional skills to observe and test plaintiff's mood, affect, behavior, and cognition. Therefore, Dr. Swanson's opinion was not overly reliant on plaintiff's self-reports and not properly rejected on this ground. *See id.* Furthermore, Dr. Swanson specifically opined that plaintiff's behavior "did not suggest malingering or exaggeration of symptoms" (AR. 314). This conclusion, combined with her observations, results in an opinion that was not properly discounted by the ALJ. "[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008) (*citing Edlund v. Massanari,* 253 F.3d 1152, 1159 (9th Cir.2001)).

Despite Dr. Swanson's opinion that plaintiff was neither malingering nor exaggerating, the ALJ found plaintiff "less than forthright" in relating her symptoms during the examination (AR. 27). The ALJ based this finding on discrepancy between

plaintiff's report of nightmares to Dr. Swanson and subsequent denial of nightmares to a treating provider only a week later (AR. 27).  On February 1, 2013, Dr. Swanson stated that plaintiff "reports nightmares, flashbacks, intrusive thoughts, pronounced startle response and avoidance of anything that might trigger memories of abuse" (AR. 312). On February 7, 2013, Jeffery Nelson, M.D. noted plaintiff was sleeping well and had no nightmares (AR. 387). While plaintiff's reporting was inconsistent, the inconsistency does not support the ALJ's conclusion that plaintiff was not credible during her examination with Dr. Swanson. Plaintiff has a documented history of nightmares, including a prescription for Prazosin from Dr. Nelson to help control the nightmares (AR. 270). Furthermore, psychiatric symptoms wax and wane over the course of treatment. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).  Given the nature of mental illness and her medication, plaintiff's nightmares may come and go. The ALJ's identification of a few conflicting reports of nightmares is not substantial evidence to discount plaintiff's credibility and determine she was not "forthright" during her appointment with Dr. Swanson.

      Finally, the ALJ rejected Dr. Swanson's opinion because she "suggests significant social limitations that do not appear to be related to her own observations of the claimant, which indicated the claimant was appropriately groomed, polite, and cooperative, that she maintained good eye contact and demonstrated normal speech, and that she demonstrated normal mood and affect" (AR. 27).  However, Dr. Swanson also noted slow pace, childlike manner, and that plaintiff "giggled frequently" (AR. 313). The ALJ acknowledged that Dr. Swanson suggested "claimant's manner was childlike" but noted

that plaintiff was "less than forthright" (AR. 27). As discussed above, the ALJ's finding that plaintiff was not forthright was not based on substantial evidence in the record. The childlike manner and giggling support Dr. Swanson's opinion that plaintiff would have difficulties with the social aspects of a work environment. Additionally, Dr. Swanson noted cognitive issues, and paucity of fund of knowledge, insight and judgment (AR. 314). These issues would impact plaintiff in responding appropriately to workplace relationships, pressures, and change. Therefore, Dr. Swanson's observations and mental status testing support the significant social limitations assessed.

None of the ALJ's given reasons were legally sufficient to reject Dr. Swanson's opinion. However, the Court will not reverse a decision by an ALJ in which the errors are harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1117-22 (9th Cir. 2012). The Court must first determine whether the ALJ's error was "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion," and therefore, harmless. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

Here, the ALJ's erroneous rejection of Dr. Swanson's opinion was reflected in the residual functional capacity ("RFC"). The ALJ included mental impairment related limitations in the RFC.

> The claimant has the capability to perform mental activities that are generally required by competitive remunerative work as follows: She can understand, remember, and carry out simple instructions required of jobs classified at a level of Special Vocational Preparation (SVP) of one and two, or unskilled work. She can make judgments on simple, work-related decisions, can respond appropriately to supervision and co-workers, and can deal with occasional changes in the work environment that requires only occasional exposure to, or interaction with, the general public (AR. 22).

ORDER ON PLAINTIFF'S COMPLAINT - 10

However, this RFC does not reflect the severe limitations assessed by Dr. Swanson. Dr. Swanson specifically noted that plaintiff would be "markedly limited in her ability to make work-related judgments and decisions" (AR. 314). The ALJ's inclusion of "simple, work-related decisions" not only fails to account for, but contradicts Dr. Swanson's opinion of plaintiff's inability to make workplace decisions. Similarly, the ALJ found plaintiff capable of responding appropriately to supervision and co-workers, whereas Dr. Swanson opined she would be "markedly to extremely limited in her ability to respond to and interact appropriately" with supervisors and co-workers (AR. 314). Furthermore, the ALJ failed to include any restrictions related to Dr. Swanson's opinion that plaintiff was markedly limited in her ability to respond appropriately to work related pressures (AR. 314).

The ALJ's failure to properly consider the significant limitations assessed by Dr. Swanson "provide[s] an incomplete residual functional capacity [RFC] determination." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). When the RFC is incomplete, the hypothetical question presented to the vocational expert and relied on at step five is also incomplete. *See id.* at 1162. As a result, "the ALJ's reliance on the vocational expert's answers [is] improper." *Id*.

The ALJ's failure to include the marked limitations in areas of workplace judgments, pressures, and interaction with supervisors, and moderate limitations in appropriate response to changes in work in the RFC resulted in an incomplete hypothetical to the vocational expert. This results in a disability determination that is not

1 supported by substantial evidence. *See Hill*, 698 F.3d at 1161-62. The error is harmful

2 and reversal is required for further proceedings.

3     As requested by plaintiff, this matter shall be remanded for a new hearing in order

4 to allow for the ALJ's reassessment of the medical evidence.  The Court notes that the

5 ALJ similarly erred in rejecting Dr. Sylvia Thorpe's psychological assessment.

6 Additionally, determination of a claimant's credibility relies in part on the assessment of

7 the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility

8 should be assessed anew following remand of this matter. Finally, these new assessments

9 of credibility and medical evidence will necessarily subject the severe impairment

10

11 findings at step two to re-evaluation.

## CONCLUSION

13     Based on these reasons and the relevant record, the Court **ORDERS** that this

14 matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

15 405(g) to the Acting Commissioner for further consideration consistent with this order.

16     **JUDGMENT** should be for plaintiff and the case should be closed.

17     Dated this 26th day of January, 2016.

J. Richard Creatura
United States Magistrate Judge